IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN RE: JOINTLY MANAGED R.S. 2477 ROAD CASES LITIGATION[1] | **MEMORANDUM DECISION AND ORDER CONCERNING POSSESSION AND CONTROL OF THE ROADS**<br><br>Case Nos:<br><br>2:10-cv-1073   2:12-cv-434<br>2:11-cv-1043   2:12-cv-447<br>2:11-cv-1045   2:12-cv-451<br>1:12-cv-105   2:12-cv-452<br>2:12-cv-423   2:12-cv-461<br>2:12-cv-424   2:12-cv-462<br>2:12-cv-425   2:12-cv-466<br>2:12-cv-426   2:12-cv-467<br>2:12-cv-428   2:12-cv-471<br>2:12-cv-429   2:12-cv-472<br>2:12-cv-430   2:12-cv-477<br><br><br>Judge Clark Waddoups |

---

[1] This Memorandum Decision and Order applies to twenty-two cases. To simplify the caption, the court refers to the cases collectively as "In re: Jointly Managed R.S. 2477 Road Cases Litigation." This Memorandum Decision and Order shall be docketed in each of the cases listed by case number.

## INTRODUCTION

The United States has moved for an Order to Enforce the Protections of the Quiet Title Act, 28 U.S.C. § 2409a(b), in the twenty-two jointly managed R.S. 2477 road cases.[2]  Section 2409a(b) specifies that "[t]he United States shall not be disturbed in possession or control of any real property involved in" a quiet title action.  The United States asserts this means it may exercise ownership rights over the roads as long as this litigation is pending.  Mot. to Enforce, at 2 (ECF No. 824).[3]  Taking into account the existing case records and the context of an R.S. 2477 action, the court concludes the United States' motions are overbroad and have failed to address relevant legal issues.  Accordingly, the court denies the motions.

## BACKGROUND

The United States contends Plaintiffs are not abiding by the following limitation stated under 28 U.S.C. § 2409a(b):

> The United States shall not be *disturbed* in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days; and if the final determination shall be adverse to the United States, the United States nevertheless may *retain* such possession or control of the real property or of any part thereof as it may elect, upon payment to the person determined to be entitled thereto . . . .

---

[2]  The twenty-two cases were filed respectively by twenty-two counties in Utah.

[3]  The United States filed the same motion in the twenty-two cases.  When citing to the motions, the court references the docket in the consolidated case of *Kane County, Utah (2), (3), & (4) v. United States*, No. 2:10-cv-1073 (hereinafter "*Kane County (2)*").  Additionally, any pincite to that record refers to the ECF page numbering at the top of the page, with the exception of pincites to a hearing transcript.  Pincites to a hearing transcript refer to the pagination at the bottom of the page.

(Emphasis added).  The United States contends the statute affords it the right to "enjoy[] and exercis[e] the rights of ownership over the real property in question so long as the corresponding litigation remains pending, plus sixty days."  Mot. to Enforce, at 2 (ECF No. 824).  The United States owns the land over which the alleged R.S. 2477 roads run, but "the real property in question" are the alleged R.S. 2477 rights-of-way.  The types of burdens that the roads may impose on the land during the pendency of the litigation, and the nature of the United States' possession and control over the roads is at issue.[4]

Among the twenty-two jointly managed road cases, there are approximately 12,000 roads at issue, and they comprise a significant portion of the transportation system in Utah.  The United States has filed motions to enforce the statutory provision for all 12,000 roads.  Although the United States contends the plaintiffs are not abiding by the § 2409a(b) limitations, it provides an example only from one of the cases.  *See* Mot. to Enforce, at 2 (stating "[r]ecent events in one of these cases . . . have made clear that Plaintiffs are failing to abide by the constraints and limitations imposed upon them by the Quiet Title Act").  The example is from *Kane County (2)*.  The court therefore addresses the motions to enforce based on the events in that case, but the analysis applies the same to the other R.S. 2477 road cases.

---

[4]  As discussed further below, the types of suits under the Quiet Title Act involve fee title and non-fee title disputes.  R.S. 2477 rights-of-way are a nonpossessory property interest.  *See LKL Assocs., Inc. v. Union Pac. R.R. Co.*, 17 F.4th 1287, 1297 (10th Cir. 2021) (addressing "settled principles of property law" that apply to easements because they are "a nonpossessory interest in land") (quotations and citation omitted)).  Consequently, "possession and control" in the R.S. 2477 context is different from possession and control that exists in a fee title situation.

On August 21–22, 2024, the court held an evidentiary hearing in *Kane County (2)*. The evidentiary hearing pertained to a planned installation of a box culvert on the K6000 House Rock Valley Road in Kane County, which culvert has since been installed. *See* Notice, at 2 (ECF No. 817) (providing notice about the installation). Based on undisputed evidence presented at the hearing, the court finds for purposes of the motions to enforce:

1. A culvert was needed where the House Rock Valley Road crosses a wash and becomes flooded during weather events. *See* Hr. Tr., at 62:16–17 (ECF No. 811) (confirming the BLM supported installation of a culvert); *id.* at 18:23–19:2 (identifying Buckskin Wash crossing the House Rock Valley Road); Hr. Tr., at 250:8–18 (ECF No. 812) (describing condition of the House Rock Valley Road at Buckskin Crossing).

2. The House Rock Valley Road was being used by the public, in part, to reach various federal recreational and scenic sites. Hr. Tr., at 19:2–25, 186:16–187:23, 198:24–199:19 (ECF No. 811).

3. The public was disturbing adjoining federal land by creating a bypass road to go around a problematic area where Buckskin Wash crosses the House Rock Valley Road. *Id.* at 162:13–19, 179:1–11, 194:1–8.

4. The Department of Interior classifies culvert installations as a categorical exclusion from National Environmental Policy Act ("NEPA") requirements. *Id.* at 36:21–37:16, 38:3–23, 39:15–18, 40:19–21, 41:11–42:12.

5. Kane County has had a long time practice of installing culverts as part of its standard road maintenance and repair projects, both prior to and during the pendency of *Kane County (2)*. *Id.* at 139:1–154:1 (testimony by Kane County road maintenance director

4

about Kane County's culvert installation projects, including new installations and repair of existing installations).

6. At least since 1997, the Bureau of Land Management has never been involved on prior culvert installation projects by Kane County, *id.* at 56:7–16, including installations involving culverts identical to the culverts needed on the House Rock Valley Road. *Id.* at 169:9–25. In other words, Kane County presented evidence that all culvert installations by Kane County, prior to the one at issue on the House Rock Valley Road, were done solely under the control and direction of the County.[5]

The United States presented no contrary evidence about culvert installations by Kane County. Instead, the United States cited to a definition in *SUWA v. BLM*, 425 F.3d 735, 749 (10th Cir. 2005) (the "*SUWA Decision*"), where installation of culverts was defined as an "improvement." According to the United States, because culvert installations were listed as an improvement, such projects are under the United States' control. This court recognized, at the evidentiary hearing, the definition stated in the *SUWA Decision*, but it also noted that culverts were not at issue in the *SUWA Decision*. Because the parties did not raise the issue of culvert installations, not surprisingly, the word "culverts" appears only one time in the *SUWA Decision*. Unlike a project such as paving a dirt road, culvert installations are not in the obvious "improvement" category. Consequently, this court afforded the United States the opportunity to

---

[5] When a major road called Sand Dunes Road had a large culvert wash out, Kane County informed the BLM about the repair project, but the communication was not for the purpose of Kane County obtaining consent from the BLM to replace the culvert. Hr. Tr., at 46:23–47:21, 48:23–49:25 (ECF No. 811). That is the extent to which the BLM has been involved on culvert installations by Kane County, whether they be new installations or replacement installations.

present evidence to support culvert installations constitute an improvement, but as stated above, the United States did not do so.[6]

Following the hearing, the United States sent letters to Kane County that stated the County could not proceed unilaterally with the House Rock Valley Road culvert installation. BLM Lttrs., at 2–9 (ECF No. 824-1). The United States' motions to enforce are an extension of the letters. The letters and the motions do not cite any caselaw addressing application of § 2409a(b). Nor do they address how the United States is in possession and control of the House Rock Valley Road. The United States does not maintain the road. It does not repair the road. It does not expend money to improve the road. Only Kane County and the State of Utah have been involved in such activities, and they have shown their activities date back at least to the 1950s as R.S. 2477 holders. *See generally* Mot. for Sum. Jdmt. & App. (ECF Nos. 818, 819).[7]

Besides not addressing how the United States is in possession and control of the House Rock Valley Road, the United States' motions to enforce also do not address how the United States

---

[6] Based on the procedural posture of the case, the court did not decide, at the conclusion of the evidentiary hearing, whether culvert installations are part of maintenance or an improvement. That issue has been preserved for when the court addresses the scope of the House Rock Valley Road.

[7] The United States did not dispute any material fact stated in Kane County and the State of Utah's Motion for Summary Judgment. *Kane Cnty., Utah (2), (3) & (4) v. United States*, No. 2:10-cv-1073, 2025 U.S. Dist. LEXIS 141248, at *7 (D. Utah July 23, 2025). Nor did it present any evidence of its own. *Id.* Instead, the United States contested the sufficiency of the evidence presented by the plaintiffs. *Id.* at *7–8. The court held that the evidence was sufficient and granted summary judgment where title in the K6000 House Rock Valley Road has been quieted in favor of Kane County and the State of Utah as an R.S. 2477 right-of-way. *Id.* at *8. The court's ruling remains subject to appeal.

is in possession and control of the other roads at issue.[8]  Accordingly, the State and the twenty-two Counties jointly opposed the motions.

Plaintiffs noted, that for many of the roads, the United States has asserted it neither affirms nor denies Plaintiffs' title, *see, e.g.*, Hr. Tr., at 90:9–17 (ECF No. 811) (confirming "the United States official position is that it does not dispute Kane County's title for the House Rock Valley Road"), and that such a position is wholly inconsistent with the United States' contention that it is in possession and control of the roads.  Plfs.' Opp'n Mem., at 5–7 (ECF No. 835).  Plaintiffs asserted that the question of subject-matter jurisdiction is introduced by the United States' contending there is no dispute as to title for various roads.[9]  *Id.* at 5–6.

Additionally, Plaintiffs observed that the United States has not stated how it was in possession and control of the 12,000 roads that are part of Utah's transportation system.  *See id.* at

---

[8]  This memorandum decision focuses on roads that are open to motor vehicle use by the public.  Prior to the R.S. 2477 road cases being filed, the United States closed certain roads to motor vehicle use by the public.  *Kane Cnty., Utah (2), (3), & (4) v. United States*, No. 2:10-cv-1073, 2024 U.S. Dist. LEXIS 142312, at *81–82 (D. Utah Aug. 9, 2024) (discussing road closures).  The United States' authority to act in the manner it did is questionable.  *See Kane Cnty., Utah v. Salazar*, 562 F.3d 1077, 1090 (10th Cir. 2009 (Henry, J., concurring) (stating a federal agency cannot "close *existing county roads asserted* to be R.S. 2477 rights-of-way without a reasoned and nonarbitrary basis for doing so, such as an administrative determination, based on substantial evidence, that the *asserted* right-of-way is invalid") (emphasis added)).  Nevertheless, as of the time of filing, the closed roads appear to have been under the possession and control of the United States.  The United States, however, did not identify in its motions to enforce which roads are closed.  The United States also did not identify any action by Plaintiffs that has disturbed such road closures or the United States' possession and control of them.  Due to the lack of information presented by the United States for "closed" roads, the court declines to issue an order in the abstract concerning them.

[9]  For certain "Bellwether Roads," the court has concluded a dispute of title does exist.  The conclusion was not based on the United States being in actual and/or exclusive possession and control of the roads.  *Kane Cnty., Utah (2), (3), & (4) v. United States*, No. 2:10-cv-1073, 2024 U.S. Dist. LEXIS 142312, at *81–82 (D. Utah Aug. 9, 2024)

3, 7–8. Plaintiffs asserted, "[i]f the United States was not 'in possession or control' of the property when the title suits were filed, then it cannot be 'disturbed' in its possession or control now." *Id.* at 7. Finally, Plaintiffs asserted altering the status quo, by placing the United States in possession and control of the roads now, would open the question concerning how the roads would be maintained and repaired and that the United States would necessarily have to "assume liability for each of the roads." *Id.* at 9. Plaintiffs' contentions show enforcement of § 2409a(b) in an R.S. 2477 context is significantly different from other types of quiet title actions, especially where it involves matters of public safety.

Although Plaintiffs raised serious issues in their opposition, the United States elected not to file a reply memorandum. Because the United States did not present evidence at the evidentiary hearing to show that culverts are improvements and also elected not to file a reply to Plaintiffs' opposition, the United States is resting its position solely on the language of § 2409a(b) and the definition stated in the *SUWA Decision*.

## ANALYSIS

### I.   LEGISLATIVE HISTORY AND STATUTORY LANGUAGE

#### A.   Department of Justice and Congressional Concerns Addressed by Statute

The Quiet Title Act, 28 U.S.C. § 2409a, was enacted in 1972. While Congress was considering whether it should waive sovereign immunity, so quiet title actions could proceed against the United States, it received an "executive communication" from the Attorney General of the Department of Justice. The communication stated,

> The main objection in the past to waiving sovereign immunity in
> this area has been that it would make possible decrees *ousting* the

8

> United States *from possession* and thus interfering with operations
> of the Government which have been authorized by the Congress.
> [The Department of Justice's] draft bill would eliminate cause for
> such apprehension.   The proviso in subsection (b) of proposed
> section 2409a would apply where the United States *is in possession*
> and the court finds that it *is occupying* the property without title.  If
> the United States wished *to retain possession* it would be required
> to so elect and to pay compensation . . . .

H.R. Rep. No. 92-1559 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 4547, 4554–55 (emphasis added).

After receiving the DOJ's correspondence, the bill under consideration was amended by a committee so one could not "force the United States from possession and thereby interfere with the operations of the Government." *Id.* at 4552.  Congress incorporated the DOJ's concepts, such that subsection (b) provides, "[t]he United States shall not be *disturbed* in possession or control of any real property involved in any action under this section pending a final judgment or decree, the conclusion of any appeal therefrom, and sixty days."  28 U.S.C. § 2409a(b) (emphasis added). Moreover, should a court conclude the United States is *not* the title owner of property it possesses, the United States may elect to "*retain* such possession or control" upon "just compensation."  *Id.* The executive communication and the statutory language adopted by Congress concerning § 2409a(b) show the subsection applies when there is an already existing possession and/or control by the United States.

### B.    Statutory Language Applied When in Actual Possession and Control

Caselaw applying the § 2409a(b) provision is sparse, but it supports that § 2409a(b) applies to those situations where the United States already is in actual possession or control.  In *Block v. North Dakota ex rel. Board of University & School Lands*, 461 U.S. 273, 277 (1983), "the United States and North Dakota assert[ed] competing claims to title to certain portions of the bed of the

9

Little Missouri River within North Dakota." For decades, the United States had already "been issuing riverbed oil and gas leases to private entities." *Id.* at 278. The suit was to resolve "ownership of the riverbed," *id.*, where the parties would know if the United States' actions conformed with such ownership.

Likewise, in *Cliffs Plantation Timber Farm, LLC v. United States*, No. 5:05-cv-197, 2006 U.S. Dist. LEXIS 47185, at *1–2 (S.D. Miss. May 5, 2006), the parties disputed the boundary line between two parcels, where the plaintiff asserted the United States had removed boundary markers, pins, and posts, and encroached on sixteen acres of the plaintiff's property. In other words, the plaintiff asserted the United States had taken up possession and control of the real property in contravention of the plaintiff's alleged fee title. The plaintiff sought "an order of ejection against the United States." *Id.* at *10–11. Under such circumstances, however, the United States could not be disturbed in its possession of the land during the pendency of the case. *Id.* at *11–12.

Caselaw applying § 2409a(b) has extended beyond boundary line disputes. In *United States v. Real Property Constituting Approximately Fifty (50) Acres*, 703 F. Supp. 1306, 1311–12 (E.D. Tenn. 1989), the case pertained to the United States retaining control and pursuing forfeiture of real property seized as part of a criminal action. In *Waibel Ranches, LLC v. BLM*, No. 2:15-cv-2071, 2022 U.S. Dist. LEXIS 93395, at *2–3 (D. Or. May 17, 2022), the case pertained to use of an easement. A property owner sought to close a road and eject the United States from the non-exclusive use of the road on the basis that the United States' easement across the land was defective. *Id.* at *2. Because of the United States' already existing use of the easement, it was allowed to continue using the road during the pendency of litigation. *Id.* at *3. Thus, even though the *Waibel Ranches, LLC* case did not involve a boundary dispute or exclusive control, it still

pertained to the United States retaining possession and control of what it already had and not being dispossessed of it during the litigation.  The type of possession and control is especially important when an easement is at issue.

## II.    ALTERATION OF STATUS QUO UNDER OVERBROAD INTERPRETATION

### A.    Existing Management at Time of Suit

"[A] government's claim of title to land isn't always and inherently inconsistent with . . . ownership of an easement over that land.  Easements and servient estates can (and usually do) peaceably coexist." *George v. United States*, 672 F.3d 942, 947 (10th Cir. 2012).  Nevertheless,

> [a] right of way is not tantamount to fee simple ownership of a defined parcel of territory.  Rather, it is an entitlement to use certain land in a particular way. To convert a two-track jeep trail into a graded dirt road, or a graded road into a paved one, alters the use, affects the servient estate, and may go beyond the scope of the right of way.

*SUWA Decision*, 425 F.3d at 747 (citations omitted).

The *SUWA Decision* involved three Utah counties grading roads, without consulting with or obtaining the BLM's consent, despite some of the roads never having been graded before.  *Id.* at 742.  The Tenth Circuit held that an R.S. 2477 holder may maintain and repair roads as part of standard operations, but if a project involves an improvement, the R.S. 2477 holder must consult with the BLM about the project.  *Id.* at 748.  This is so even for proposed improvements solely within the boundaries of the right-of-way.  *Id.* at 747–48.

The holding created a dividing line between when an R.S. 2477 holder may act unilaterally and when it must obtain approval by the federal government or by a court before it may proceed with a project.  The holding clarified that limitations exist on what an R.S. 2477 holder may do with the road.  Thus, for roads open to motor vehicle use by the public, standard maintenance

11

activities have been allowable, but unilateral improvements to a road have not been allowed. This was the posture of the roads at the time the suits were filed, and it has remained during the pendency of the cases. It also reflects the dividing line about the type of possession and control that has existed between the parties.

The *SUWA Decision* "endorsed" a definition about the types of activities that constitute maintenance versus an improvement. *Id.* at 749. Neither this court nor the Tenth Circuit has addressed whether the definition is part of the Tenth Circuit's holding or merely persuasive law. The definition has proved to be helpful, but it also has had gaps in its application based on actual experiences. Culverts are one of those areas.

"Maintenance" includes repairing "wear or damage [to a road] whether from natural or other causes." *Id.* at 749 (quotations and citation omitted). Kane County presented evidence that a road repair often involves installing a culvert to keep the road operational and that if it had to go through an involved process with the BLM each time a culvert needed to be installed, it would substantially alter the status quo of Kane County's transportation system. The County further presented evidence that the BLM has never been involved in culvert installation projects in Kane County until recently on the House Rock Valley Road, and that the Department of Interior considers culvert installations to be categorical exclusions from a NEPA analysis. Moreover, Kane County showed that the United States itself has installed the same type of culvert while the Monument Management Plan (2000) was in place. Hr. Tr., at 30:19–32:20 (ECF No. 811).

Under such circumstances and evidence, the court is faced with the question whether the endorsed definition in the *SUWA Decision* was meant to be binding or whether it was meant to provide guidance as the law developed in this area and "real world" experiences were applied. The

issue remains open before this court, but the United States elected not to engage on the issue at the evidentiary hearing or in its motions.  It did not show that Kane County has interfered with the United States' possession and control of the House Rock Valley Road when the County installed the culvert.  Nor has the United States shown that the plaintiffs have disturbed the United States in its possession and control of any other road.

### B.    Context of Possession and Control

Possession and control in the context of § 2409a(b) is not identical to what the court addressed in its August 9, 2024, Memorandum Decision in *Kane County (2)* because that decision pertained to subject-matter jurisdiction.  The court concluded, in that decision, that the United States has been regulating the "Jurisdictional Roads" under "management plans in such a way that valid, existing R.S. 2477 rights are no longer under the State and Bellwether Counties' control as holders of the R.S. 2477 rights-of-way."  *Kane Cnty., Utah (2), (3), & (4)*, 2024 U.S. Dist. LEXIS 142312, at *85.  Through its Monument Management Plan (2000), the United States determined what roads to close or leave open.  *Id.* at *81–82.  It determined, unilaterally, that it would not consult with Kane County about any road improvements in an R.S. 2477 context.  It only would do so in a Title V context, even though rights under Title V are more limited than an R.S. 2477 holders' rights and Title V falls under the Federal Land Policy and Management Act, not R.S. 2477.  *Id.* at *87–89.  Those and other actions by the United States were an implicit denial that Kane County was an R.S. 2477 holder of the Jurisdictional Roads, which the court concluded created a title dispute.

The court further addressed in its August 9, 2024, Memorandum Decision whether "exclusive control" is an element under the Quiet Title Act ("QTA").  *Id.* at *73.  The United States

asserted in *Kane County (2)* that exclusive control was not required to trigger the statute of limitations under the QTA. *Id.* at \*74. The court concurred that a title dispute may arise, and the statute of limitations may be triggered, even when the United States is not in exclusive control of a road. *See id.* at \*70–75; *see also High Lonesome Ranch, LLC v. Bd. of Cnty. Comm'rs for Cnty. of Garfield*, 61 F.4th 1225, 1238–39 (10th Cir. 2023) (concluding a title dispute existed based on the BLM's removal notice stating, "the County wanted public access over the roadways that crossed BLM land" and that the BLM "characterized the crossclaims as QTA claims," but where the facts of the case never involved the BLM having exclusive control of the access road).[10]

Significantly, the United States argued its position in *Kane County (2)* because the United States was not in exclusive possession and control of the roads open to motor vehicle traffic. Having not been in actual and exclusive possession and control at the time of filing or to this day, the court will not now alter the status quo to put the United States in such possession and control.

### C.    Impact Even on Adjudicated Rights if the United States' Position is Adopted

Were the court to adopt the United States' position, it would upend the existing status quo concerning possession and control in an R.S. 2477 context and have broad implications. To put this into perspective, the court references the Skutumpah Road, which is at issue in *Kane County,*

---

[10] The Tenth Circuit did state in *High Lonesome Ranch, LLC* that "[t]he limitations period under the QTA commences when the United States claims to have 'exclusive control of a road.'" *High Lonesome Ranch, LLC*, 61 F.4th at 1239. This court does not read that statement to mean that is the only time the statute of limitations is triggered. This is so because the triggering event for disputed title under the QTA and the statute of limitations must be the same—a point that the United States Supreme Court reiterated last year when addressing a statute of limitations matter. *See Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 809, 811 (2024) (stating the "statute of limitations does not begin to run until [one] is injured" and "reject[ing] the possibility that a limitations period commences at a time when the plaintiff could not yet file suit as inconsistent with basic limitations principles") (quotations and citations omitted)).

*Utah (1) v. United States*, 2:08-cv-315, but is not part of the twenty-two road cases. The court uses it as an illustration to show how application of the United States' contentions would cause significant disruption even on adjudicated R.S. 2477 roads.

Title in the Skutumpah Road has been quieted in favor of Kane County and the State, as an R.S. 2477 right-of-way, and all rights to appeal such title concluded over a decade ago. The case remains pending on remand, however, due to issues pertaining to scope. In the twenty-two cases, the United States' position is that while these quiet title actions proceed, "the Count[ies] must abide by any instructions, restrictions, or limitations imposed by the Bureau of Land Management or any other representatives of the United States . . . until both title and scope are quieted." BLM Lttr. (Aug. 27, 2024), at 3 (ECF No. 824-1). Were the court to apply the United States' reasoning to the Skutumpah Road, the United States would have to be granted possession and control of the road until all issues of scope are determined. It also would mean even though Kane County and the State are the adjudicated title holders of the Skutumpah Road and have been in actual possession and control of the road for over a century, because scope remains at issue under the QTA, they would have to abide by every instruction, restriction, or limitation directed by any agency of the federal government, per the United States' version of the law. The court concludes this is contrary to the stated purpose of § 2409a(b).

Congress has declared the Department of Interior cannot promulgate management rules in the R.S. 2477 context. *Kane Cnty., Utah (2), (3), & (4)*, 2024 U.S. Dist. LEXIS 142312, at *27–28. The Tenth Circuit also has rejected that merely because the BLM has management authority over lands, it also has management authority over rights-of-way that traverse such lands. *SUWA Decision*, 425 F.3d at 751–52. It therefore is unclear on what authority the United States has relied

15

when declaring that the State and Counties "must abide by any instructions, restrictions, or limitations imposed by the Bureau of Land Management or any other representatives of the United States" concerning the roads at issue. The sweep of that statement is limitless.

The United States' position bears resemblance to the position taken in a case filed by two environmental organizations, but ultimately rejected by the Tenth Circuit. *The Wilderness Soc'y v. Kane Cnty., Utah*, 560 F. Supp. 2d 1147, 1149 (D. Utah 2008), *aff'd sub nom. The Wilderness Soc'y v. Kane Cnty., Utah*, 581 F.3d 1198 (10th Cir. 2009), *on reh'g en banc vacated sub nom. The Wilderness Soc'y v. Kane Cnty., Utah*, 632 F.3d 1162 (10th Cir. 2011). The environmental organizations asserted Kane County had no authority to post or remove signs or declare that a road was open to off-highway vehicles. *Id.* at 1150. The district court agreed on the basis that Kane County had no adjudicated R.S. 2477 rights. *Id.* at 1159–60. The district court stated,

> the Court need only recognize that the presumption on federal land is that ownership and management authority lies with the federal government and that any adverse claimant, like the County here perhaps, is not entitled to . . . exercise unilateral management authority until it successfully has carried its burden of proof in a court of law.

*Id.* at 1160 (quotations and citations omitted).

Initially, the Tenth Circuit affirmed in a divided panel decision, and expressly agreed with the district court's conclusion stated above. *The Wilderness Soc'y v. Kane Cnty., Utah*, 581 F.3d 1198, 1220 (10th Cir. 2009), *on reh'g en banc vacated sub nom. The Wilderness Soc'y v. Kane Cnty., Utah*, 632 F.3d 1162 (10th Cir. 2011). The panel concluded Kane County could not "exercise management authority *before* it proves that it has R.S. 2477 rights of way." *Id.* at 1221 (emphasis in original).

16

Ultimately, sitting en banc, the Tenth Circuit vacated the district court's decision and ordered that the case be dismissed because the environmental organizations lacked standing.  *The Wilderness Soc'y v. Kane Cnty., Utah*, 632 F.3d 1162, 1174 (10th Cir. 2011).  Although the Court dismissed on standing grounds, it took time to note that the divided "panel decision . . . represents a broad shift in our caselaw" and was not supported.  *Id.* at 1172–73.  Thus, adjudication is not necessary before management rights may be exercised.[11]  Importantly, in *Kane County (2)* and the other road cases, management rights were being exercised by Plaintiffs at the time suit was filed.  Enjoining and altering that status quo is not contemplated by the Quiet Title Act, *see* 28 U.S.C. § 2409a(c) (stating "[n]o preliminary injunction shall issue in any action brought under this section"), and would be a significant change.  Moreover, such a change would impact public safety since the United States does not maintain or repair the roads.

D.        **Impact of the Culvert on the United States' Operations**

Arguably, the culvert installation on the House Rock Valley Road benefits the United States' operations rather than displaces them.  The culvert facilitates the public having safe access to federal recreational and scenic sites at a time when the United States has increased the number of permits it issues for site visits.  The culvert also mitigated the need for a bypass road that was disturbing adjacent federal land.  Thus, rather than interfering with the United States' management of the land and its recreational sites, the culvert arguably supports those interests.  This also favors denial of the United States' motions to enforce.

---

[11]  As stated above, the United States also has attempted to require Plaintiffs to obtain Title V permits for any road improvement unless title has been adjudicated.  This also is contrary to the rights of an R.S. 2477 holder because adjudication is not required before the United States' duty to consult, in an R.S. 2477 context, is invoked.

## **CONCLUSION**

For the reasons stated above, the court denies without prejudice the United States' Motions to Enforce in each of the cases listed in the caption, except for Case Nos. 2:10-cv-1073 and 2:11-cv-1045.  For the latter two cases, the court denies the motions without prejudice as to scope and without prejudice for all roads at issue in those cases, except for K6000 House Rock Valley Road, K9000 Hole-in-the-Rock Road, and G9000 Hole-in-the-Rock Road. For those three roads only, any enforcement issues pertaining to title and rights arising as a result of title, the court denies the United States' Motions to Enforce with prejudice.  The docket in Case No. 2:10-cv-1073 shall reflect this ruling for the K6000 House Rock Valley Road and the K9000 Hole-in-the-Rock Road. The docket in Case No. 2:11-cv-1045 shall reflect this ruling for the G9000 Hole-in-the-Rock Road.

To the extent the United States moves again to enforce possession and control under 28 U.S.C. § 2409a(b), the United States shall tailor its motion(s) to identify the road or roads at issue and explain why enforcement is appropriate notwithstanding the reasoning in this Memorandum Decision and the matters raised by Plaintiffs in their opposition memorandum.

DATED this 13th day of August, 2025.

BY THE COURT:

Clark Waddoups
United States District Judge